Nichols v. Ellis.

---

NICHOLS, *Executor, et al.* v. ELLIS *et al., Appellants.*

1. **Debtor and Creditor: PREFERENCE.** An insolvent debtor has the right to pay certain of his creditors to the exclusion of others, where there is no fraud connected with his action in that particular.

2. ———: ———. Where a father, who was nsolvent, deeded his land to his three sons upon consideration that they discharge certain of his debts amounting to the full value of the land, which they in good faith did, the conveyance will not be held fraudulent as against other creditors whose debts the sons did not agree to assume.

*Appeal from Boone Circuit Court.*—HON. G. H. BURCKHARTT, Judge.

REVERSED.

*A. M. Hough* and *W. Gordon* for appellants.

(1) The deed from E. P. Ellis to Wm. O. and P. H. Ellis was absolute on its face, and parol evidence was inadmissible to show a trust. Declarations of trust in land can only be manifested and proved by some writing signed by the party who is enabled to declare such trust. R. S. 1879, sec. 2511 ; *Green v. Cates*, 73 Mo. 122 ; *Lane v. Ewing*, 31 Mo. 75 ; *Peacock v. Nelson*, 50 Mo. 261 ; *Ringo v. Richardson*, 53 Mo. 396. (2) The giving and acceptance of the notes and cash by the respective parties constituted payment for the land. *Appleton v. Kennon*, 19 Mo. 637 ; *Wiles v. Robinson*, 80

Nichols v. Ellis.

Mo. 52, and cas. cit. (3) The instruction asked by defendants should have been given. Under the pleadings and evidence the court should have found for defendants. A judgment should be responsive to the issues presented in the pleadings. *Ross v. Ross*, 81 Mo. 84; *Dougherty v. Adkins*, 81 Mo. 411; *Newham v. Kenton*, 79 Mo. 382; *Muenks v. Bunch*, 90 Mo. 500. (4) Defendants' objections to plaintiffs' witnesses, Nichols, Babb, Johnson and Murry, should have been sustained. This testimony was irrelevant, incompetent and not admissible under the pleadings and did not tend to prove the cause of action stated in the petition. *Mays v. Pryce*, 95 Mo. 613; *Boyd v. Jones*, 60 Mo. 470, and cas. cit.; *Albert v. Besel*, 88 Mo. 154, and cas. cit. (5) It is well settled that a debtor has a right to prefer one creditor over another. *Sexton v. Anderson*, 95 Mo. 379; *Sibley v. Hood*, 3 Mo. 290; *Cason v. Murray*, 15 Mo. 378; *Sellers v. Baily*, 29 Mo. App. 174.

*S. Turner, W. J. & J. G. Babb* and *D. H. McIntyre* for respondents.

There is some conflict in the testimony of the witnesses, but not more than is usual in such cases and the defendants' witnesses were strongly contradicted by plaintiffs' witnesses, some of whom did not appear to have any interest in the controversy. But the witnesses were all before the court which tried the cause and that court was therefore better able than this court to determine the credit to which such witnesses were respectively entitled. *Judy v. Bank*, 81 Mo. 404.

BLACK, J.—In January, 1881, Elisha P. Ellis, who was then insolvent, conveyed to his sons Peter H. and William O. Ellis one hundred and sixty acres of land for the consideration of four thousand dollars. In 1882 and 1883, Thomas Nichols, as executor of Sarah Johnson, and J. G. Babb recovered each a judgment against

Elisha P. Ellis. The two judgments amounted to about fifteen hundred dollars at the date of this suit and the debts were incurred by Elisha P. Ellis prior to the date of his deed to his two sons.

Subsequently, Nichols and Babb commenced this suit in equity against Elisha P. Ellis and his sons, Peter H. and William O., to charge the land with a trust for the payment of their debts. They allege that, although the deed to the boys is absolute on its face, yet it was, by the parties thereto, intended and designed to be a conveyance to the sons for the purpose of paying off the indebtedness of Elisha P. Ellis, and it is then alleged that the boys have failed to execute the trust and have converted the property to their own use. The circuit court found there was no trust created in favor of the plaintiffs. The further finding is, that the boys, in consideration of the deed to them, assumed and undertook to pay off the debts of Elisha P. Ellis, and on this finding the court gave two judgments, one in favor of each plaintiff and against all three of the defendants. To reverse these judgments defendants perfected this appeal.

There are some facts disclosed on both sides and about which there is no dispute. For the plaintiffs, it is shown that Elisha P. Ellis was insolvent when he made the deed to the one hundred and sixty acres of land to his two sons. He then owed the debts held by the plaintiffs which were thereafter reduced to judgments. On the other hand, it is shown beyond all doubt that Elisha P. Ellis was indebted to each of his three brothers and to a Mr. Christian. The debt to Christian was secured by a deed of trust on part of the land in suit, which had been advertised for sale under the deed of trust. In this state of affairs, the three brothers of Elisha P. Ellis, Christian and the two sons of Elisha all met at the house of the latter. It was then agreed that

the boys would buy the land in question at the price of four thousand dollars, and pay that amount to the four creditors. These debts amounted to much more than four thousand dollars. Christian's debt amounted to one thousand dollars, but he agreed to take eight hundred dollars in cash and release the balance. The three brothers agreed to throw off portions of their demands, take the notes of the boys and release Elisha from the payment of the residue. Pursuant to this agreement, Elisha conveyed the land to his sons, and they paid Christian the eight hundred dollars in cash, and gave their notes to the three brothers of their father for the amount agreed upon, the notes and cash amounting to four thousand dollars, which was the full value of the land. The brothers and Christian surrendered their demands against Elisha.

To show that the boys agreed to pay all the debts of their father, the plaintiffs offered the following evidence. Mr. Nichols says he had two conversations with Elisha P. Ellis, one before and one after the date of the deed to the boys, in which Elisha said he had turned his land over to the boys and they had assumed the payment of his debts.

O. P. Johnson, who held a debt which was taken up by one of the brothers of Elisha, testified that he had a conversation with Elisha in 1879 or 1880, in which the latter said he had turned his farm over to the boys, who were to pay his debts and keep him and his wife. The witness says he afterwards related this conversation to one of the boys, namely, Peter H., and he said it was so, and that they had paid some of the debts of their father and intended to pay all of them. This witness says he wanted Peter to acknowledge in writing his obligation to pay the debt, but he did not do it.

James Murry testified to a conversation with William O., in which the latter said he and his brother

had agreed to pay all of their father's debts, that he did not state the amount of the debts but just made that remark. Some of these admissions are denied by the defendants, and others are denied to have occurred in the language or with the meaning detailed by the above witnesses.

Now it is not charged or claimed that there was any fraud in the transaction which resulted in the conveyance of the land to the boys. The debts which Elisha Ellis owed his brothers and Christian are conceded to have been just and valid. Some of them are shown to have been security debts paid for Elisha. Elisha P. Ellis had a right to pay these debts to the exclusion of other creditors, though insolvent, there being no fraud in the transaction. The question then is, whether these boys assumed or agreed to pay these debts held by the plaintiff? The defendants, and other persons who were parties to the transaction which led to the conveyance to the boys, all testify in positive terms that the boys agreed and agreed only to pay four thousand dollars for the land, which was its full value, and that amount they did pay in cash and by giving their notes to the preferred creditors, who accepted the cash and notes, and in consideration thereof discharged the original debtor. Here, then, is a transaction openly made, fair in all of its terms, and reduced to writing at the time it was made, and in it no provision is made for the payment of the debts of the plaintiffs. The debts of Elisha P. Ellis amounted to twice the value of the land, and it is unreasonable to say that the boys agreed to pay all of them for it. The claim of the plaintiffs stands on these loose conversations, some of them had with Elisha Ellis only, and is contradicted by the undisputed facts before noted. These alleged conversations, so easily misunderstood and made to apply to all, instead of a part of the debts, are wholly insufficient

to overcome the more positive, direct and certain evidence ; and the finding should have been for defendants on all of the issues.

It is argued with much force that when the court found there was no trust, it should have dismissed the petition ; but in view of the result reached it is unnecessary to consider this question ; nor need we review the rulings in the admission of evidence.

The judgment is reversed and the petition dismissed. All concur, except BARCLAY, J., who dissents.