BAKER, *Appellant*, v. HARVEY *et al.*

### Division One, March 24, 1896.

1. **Fraudulent Conveyance:** CONDITIONAL CONVEYANCE: REBUTTING EVIDENCE. Where a conveyance, absolute in form, of all the grantor's real estate was made by an insolvent debtor to his brother in consideration that the grantee pay the grantor's debts, the fact that the grantee kept an account of receipts and expenditures in managing and disposing of the property; that he gave himself credit for sums paid to the grantor before any of the property so conveyed was sold, and submitted to the grantor a statement of the account after such sales; that he paid to the grantor the rentals of the homestead, which was included in the deed, and that he subsequently, for a nominal consideration, conveyed the homestead to the grantor's wife, did not necessarily show that the conveyance was on condition, and that the grantor retained an interest in the property, such conclusion being rebutted by the testimony of the grantee, who was the only witness, that he bought the land outright, and by the fact that he assumed debts of the grantor greatly exceeding the value of the property.

2. ———: INSOLVENT DEBTOR: SALE OF PROPERTY. An embarrassed debtor may make sale of his property which he deems advantageous, to enable him to raise the necessary means for paying off his creditors, and to prevent its sacrifice at forced sale under execution, and for this purpose the law recognizes his right to sell for cash or on time; provided the sale is for an honest purpose, and not to withdraw his property from legal process for his just debts. (*Dougherty v. Cooper*, 77 Mo. 531.)

3. ———: ———: PREFERENCE. An insolvent debtor has the right to prefer one or more of his creditors to the exclusion of others.

4. ———: ———: ———. A sale of land by an insolvent debtor to his brother in consideration that the grantee discharge debts of the grantor amounting to more than the value of the property conveyed is not fraudulent as against a creditor whose debt was not included in the agreement.

5. ———: ———: ———: HOMESTEAD. The facts that the grantee permitted the grantor to occupy, for a time, the homestead which was included in the sale, and afterward to receive the rents and profits of the same, are not conclusive on the question of fraud; such inference being open to rebuttal by other circumstances in the case.

*Appeal from Saline Circuit Court.*—Hon. Richard Field, Judge.

Affirmed.

*Leslie Orear* and *Alf. F. Rector* for appellant.

(1) The conveyance from J. G. L. Harvey to his brother was in fraud of the grantor's creditors, and its necessary effect was to hinder and delay them in the collection of their debts then about to ripen into executions. The grantee states that the 'object and purpose of the conveyance was to reduce the debtor's property into money so as to prevent it from being sacrificed by the legal process, viz., the executions then about to be issued. (2) It would make no difference as to the legal effect of the instrument whether a surplus was anticipated by the parties or not. The transfer is equally void whether such a surplus be anticipated or not. It is sufficient if it is deemed by the parties to be a transfer in any way advantageous to the grantor. *VanNest v. Yoe,* 1 Sandf. Ch. 4; *Ward v. Trotter,* 3 Mon. (Ky.) 1; *Vernon v. Morton,* 8 Dana, 247; *Bank v. Nunies,* 80 Ky. 334; *Bigelow v. Stringer,* 40 Mo. 195; *Phelps v. Curts,* 80 Ill. 109; *Gardner v. Bank,* 95 Ill. 298; *McPherson v. McPherson,* 21 S. Car. 261. (3) Practically the leaving of the $15,000 of the purchase money in the hands of T. R. E. Harvey with directions to pay his creditors, "so far as they were then known," was an assignment of that fund for that purpose with the expectation of realizing a considerable surplus for the assignor and at best was an evasion of the assignment law of this state. T. R. E. Harvey undertook to carry out such design by paying the Rumley debt and charging it against his brother J. G. L. Harvey, in the account introduced in evidence, in addition to the $15,-

000. (4) T. R. E. Harvey states that the debts were in the neighborhood of $15,000. He refrains from stating whether more or less, presumably less. *Hadden v. Spader*, 20 Johns. 553; *Dunphy v. Klensmith*, 11 Wall. 610; *Mann v. Appel*, 31 Fed. Rep. 378. (5) The fraudulent purpose of the grantor is sufficiently shown by the fact that the grantee testified that he was in an insolvent condition at the time of the making of the conveyance and that his creditors were pushing him; that they had come from Chicago and Indiana; that he made the conveyance of all his property to a near relative; that he remained in possession of a portion of it without rent charge, and that after he removed from it he received the rent from it; that the grantee actually paid the grantor rent for the same premises as his tenant; and after that, directed the real estate agent to turn over the rents to the grantor, that the parties refrained from conversations or agreement as to details of the arrangement and management. (6) A fraudulent agreement may be inferred from, "doing something and saying nothing." The physical facts are to outweigh the unexpressed intentions of the parties, where the manner of dealing with the property conveyed shows the purpose for which the conveyance was in fact made. *Babcock v. Eckler*, 24 N. Y. 623; *Frank v. Renter*, 116 Mo. 517; *Stanton v. Boschert*, 104 Mo. 393.

*T. H. Harvey* and *Davis & Duggins* for respondents.

(1) There was no fraud in the conveyance from J. G. L. Harvey to his brother. It was made for an honest purpose, viz., to raise money to pay the debts of the grantor. There was no trust, secret or otherwise. The grantor was in debt, his property was

about to be sold under deed of trust and the evidence shows that if sold in that way it would have been sacrificed. Conveyances under such circumstances and for such a purpose 'are upheld in this state. *Robinson v. Dryden,* 118 Mo. 534; *Nichols v. Ellis,* 98 Mo. 344; *Shotwell v. McElhinney,* 101 Mo. 677. (2) The fact that the grantor was in debt, that his property was about to be sold under deed of trust, that he had been sued by unsecured creditors and that the conveyance was made for the purpose of preventing a sacrifice of the property at a forced sale, did not render the deed fraudulent, if the sale was made in good faith for the purpose of raising money to pay the debts of the grantor. *Dougherty v. Cooper,* 77 Mo. 28; *Murray v. Cason,* 15 Mo. 379. (3) The evidence does not support appellant's contention that the $15,000 of the purchase money was left in the hands of T. R. E. Harvey with directions to pay J. G. L. Harvey's creditors "so far as they are known." (4) Plaintiff's only witness, T. R. E. Harvey, testified that the conveyance was made in good faith for a valuable consideration, and that he knew nothing of the existence of the debt due Wm. Deering & Company. Appellant can not be heard to impeach the testimony of his own witness. *Chandler v. Fleeman,* 50 Mo. 239. (5) The insolvency of the grantor and the relationship between the parties to the conveyance charged to have been made in fraud of the grantor's creditors are not sufficient in themselves to establish fraud. There must be proof of fraud; it can not be presumed. If the facts shown are consistent with an honest purpose and fair dealing, honesty in the transaction should be inferred. *Siegel v. Quigley,* 119 Mo. 76; *Robinson v. Dryden,* 118 Mo. 534; *Garesche v. McDonald,* 103 Mo. 10; *Ames v. Gilmore,* 59 Mo. 537; *Rumbolds v. Parr,* 51 Mo. 592; *Nichols v. Ellis,* 98 Mo. 344.

MACFARLANE, J.—This is a suit in the nature of a creditor's bill to set aside, as fraudulent, a conveyance by defendant J. G. L. Harvey to his brother T. R. E. Harvey and a deed from the latter to the wife of the former. The petition charges in substance, and the evidence shows conclusively, these facts:

In September, 1884, the said defendant J. G. L. Harvey became indebted to Deering & Company in the sum of $732.50, evidenced by two promissory notes. For a balance on these notes judgment was rendered against him November 22, 1886, for $353.67. A sale of lot 100 in the city of Marshall, was made under execution upon this judgment on November 12, 1891, and plaintiff was the purchaser for $10.50, to whom the sheriff made and delivered a deed.

In December, 1884, said defendant was, and prior thereto had been, engaged in a mercantile business in Marshall. He owned said lot 100 and occupied it as a residence. He also owned a valuable farm in the county of Saline. The cash market value of the aggregate property at the time, which was one of depression in real estate values, was about $10,000, though thought to be intrinsically of greater value. The farm was incumbered by a deed of trust amounting to $4,000 and some unpaid interest. Defendant failed in his business and became wholly insolvent. He owed including the deed of trust near or quite $15,000.

His brother, T. R. L. Harvey, was a man of considerable means who lived on a farm in said county. Defendant called upon his brother for assistance. Fruitless efforts were made by the two to borrow money with which to pay the creditors. A sale of the land under the deed of trust was threatened. Suits also had been commenced or were threatened.

This being the condition of affairs on the thirty-first of December, 1884, defendant made to his brother

a deed conveying to him all his real estate including said lot. The consideration expressed in the deed was $15,000. At the same time and as the real consideration, the grantee assumed the payment of the deed of trust, and also unsecured debts of defendant, the whole amounting to about $15,000. The particular debts assumed were specified and listed. The brother by borrowing money on his own land was able to pay and did pay all the debts assumed. The debt of Deering & Company was not one of them. After the parties supposed all the assumed debts had been paid the balance of the $15,000 purchase price amounting to between $300 and $400 was paid to defendant. The brother afterward paid on a disputed debt, by way of compromise, the sum of $600. Defendant with his family, soon after conveying the property to his brother, moved to Kansas City, where he continues to reside.

From the time of the conveyance the said T. R. E. Harvey rented lot 100 and paid the net rents to his brother up to May 18, 1890, when he conveyed the same, in consideration of $1, to the wife of his brother, who is also defendant in this suit. Between these periods the said T. R. E. Harvey gave or paid said defendant sums aggregating between $500 and $600.

The grantee T. R. E. Harvey was the only witness examined. He testified that the purchase was absolute. There was no agreement or understanding that the grantor should retain any right or interest in the land or to the proceeds of sales above the purchase price. He bought the land for the purpose of aiding his brother in the payment of his debts and to prevent a sacrifice of the property which would result from a forced sale at that time. The price paid was more than the market value of the property. In payment he assumed the payment of certain specified debts amount-

ing to about $15,000. These debts he paid. The Deering & Company debt was not one of them. After paying these debts a balance of between $300 and $400 was paid to his brother. He kept an account of the receipts and expenditures in managing and disposing of the property, not for the benefit of his brother, or with a view of accounting to him for the net proceeds, but for his own satisfaction in order that he might know the financial results of the transaction.

While there was no understanding with his brother it was his intention, after he had reimbursed himself, to do something for him. Carrying out this intention he made the conveyance of lot 100 to his brother's wife. He gave his brother a statement of the account he had kept because he thought it would be some satisfaction for him to know how the property had been managed.

The account as kept and entered on the books commenced:

T. R. E. Harvey in account with real estate bought of J. G. L. Harvey, Dec., 1884:

1884. Dec.  By amount of purchase money.................$ 15,000 00

Then follows an account of expenditures. The items include payments to J. G. L. Harvey of $550, in August and September, 1889.

On the other side of the account, headed with the same statement, are charged against himself receipts for rent of the farm, and receipts on sale of one tract.

The evidence was all introduced by plaintiff, and at its conclusion the court sustained a demurrer thereto and entered judgment dismissing the bill. Plaintiff appealed.

I. The case is presented in two aspects: *First,* that by the agreement between the parties to the conveyance made in 1884 the grantee took and held the

property, as trustee merely for the purpose of disposing of the same and paying the debts of the grantor, and afterward of accounting to him for any surplus; and, *second*, that the conveyance was fraudulent and void as to existing creditors.

The undisputed facts that the grantee kept an account of the receipts and expenditures of money in the management and sale of the land; that he credited himself for amounts paid the grantor before the land was sold; that he submitted to the grantor a statement of the account after the land was sold; that he paid to him the rents of the homestead property, and that he conveyed the same property to his wife, are all circumstances having much weight in support of the first theory. But the evidence of the grantee evidently satisfied the learned circuit judge that these circumstances were overcome and that the conveyance was an absolute one in fact as well as in form.

The generosity of the grantee in voluntarily returning to the wife of the grantor the homestead property would be open to suspicions which might not ordinarily be overcome by the mere statement of one of the parties. But the circumstances must be weighed along with the testimony of the witness. The circumstances are not inconsistent with the explanation. The generosity of the grantee in taking the property and burdening himself with debts amounting to much more than its value, satisfactorily explains his subsequent acts of generosity in giving his brother money and in returning to his family a part of the ultimate profits realized on the transaction. The question for the chancellor was whether the evidence of the witness was credible in the face of the circumstances. The chancellor necessarily found that the sale was absolute and unconditional, and what was subsequently done were voluntary acts of generosity on the part of the grantee.

We think the evidence justified the conclusion reached.

There can be no doubt if the conveyance was without condition, and was not affected with fraud, the grantee had the right to give the homestead property to his brother's wife or otherwise dispose of it as he saw fit.

II. Was the conveyance vitiated by fraud?

Defendant was insolvent and immediate sale and probable sacrifice of his property was threatened. His debts greatly exceeded the market value of his property including his homestead. He made ineffectual efforts to raise money on his property to pay his liabilities. He sold the property for its full value. The sale included the homestead upon which the creditors had no claim. The entire purchase price was appropriated to the payment of his debts. He selected the creditors who should be paid and the evidence shows he included all he could at the time recall. It is not shown that any of the secured creditors were delayed or hindered in the collection of their debts. Some of them by agreement extended the time of payment.

Assuming, as has been found, that the sale was unconditional, in what does the fraud consist?

"An embarrassed debtor may make sale of his property which he deems advantageous to enable him to raise the necessary means for paying off his creditors and to prevent its sacrifice at forced sale under execution, and for this purpose the law recognizes his right to sell for cash or on time." *Dougherty v. Cooper*, 77 Mo. 531, and cases cited; *State ex rel. v. Purcell*, 131 Mo. 312.

This right of course depends upon the purpose of the sale being honest, and not to withdraw his property from process for his just debts. The fact that creditors are thereby hindered or delayed does not necessarily render the sale fraudulent. A debtor without

cash or credit can only pay his debts by sale of his property. Honesty requires him to appropriate his property to the payment of his debts. To tie the hands of a debtor in such circumstances would mean a sacrifice of property and generally a loss to creditors.

The conveyance was not fraudulent for the reason that the debt of Deering & Company was not secured or provided for. An insolvent debtor has the right to prefer one or more of his creditors to the exclusion of others. This right has been recognized by many decisions of this court. *Sexton v. Anderson*, 95 Mo. 373; *Goddard, etc., Co. v. McCune*, 122 Mo. 431, and cases cited.

In *Nichols v. Ellis*, 98 Mo. 344, the question decided is thus stated in the headnote to the opinion: "Where a father, who was insolvent, deeded his land to his three sons upon consideration that they discharge certain of his debts amounting to the full value of the land, which they in good faith did, the conveyance will not be held fraudulent as against other creditors whose debts the sons did not agree to assume."

Much importance is attached to the fact that the grantor was for a time permitted to occupy the homestead property and afterward to receive the rents and profits of the same. These facts undoubtedly suggest with much force the conclusion that some interest was retained by the grantor in this property. They would, however, only constitute evidence, or badges, of fraud in the conveyance. They are not conclusive. The grantee though *bona fide* had the right to permit his brother to occupy the premises and to receive the income therefrom if he desired to do so. Such acts do not carry with them the degree of suspicion, when allowed by a prosperous person to his unfortunate brother, as in case no such relationship exists. *Robinson v. Dryden*, 118 Mo. 534.

We accept the conclusion of the trial court that the evidence of fraud appearing from the conduct of the parties is fully rebutted by the testimony of the witness. We reach this conclusion more readily in view of the fact that this property was the homestead of the grantor and was not liable for the debts of his creditors. There was no occasion for him to sell it if he wished to preserve it from sale by his creditors. It was secure from them when standing in his own name, so long as its homestead character continued. Why attempt to secure by fraudulent means an advantage he already held under the law? *Macke v. Byrd*, 131 Mo. 682.

The question is suggested here whether the sale and conveyance of the homestead could be attacked for fraud by creditors of the grantor, but as we find that no fraud in the conveyance was proved, we need not pursue the question. The judgment is affirmed. All concur.