KINCAID *et al.*, *Appellants*, v. IRVINE.

Division Two, July 6, 1897.

1. **Preference Among Creditors**: RIGHT TO PREFER A KINSMAN TO A STRANGER.   When there is no element of fraud in the transaction, a debtor in failing circumstances may prefer his kinsman who is his creditor, as well as he may a stranger.   And while a court of equity will scan the transaction with a jealous eye, preference and relationship will not afford sufficient evidence of fraud, and the deed granting the preference will be upheld in a suit by his other general creditors to set it aside, when the suit is founded on such relationship.

2. **Finding of Facts by Chancellor**: VALUE OF LAND: APPELLATE PRACTICE.   Seven witnesses for plaintiff testified that the value of the eighty acre farm in controversy was about $20 per acre.   Nine witnesses for defendant fixed the value at $13 per acre.   The jury weighing this evidence found its value to be $15.30 per acre and that finding was approved by the chancellor.   This court will defer to the judgment of the chancellor approving the verdict of the jury, he living in that circuit and being better advised as to the value of land in that section of the country.

3. **Consideration for Deed**: PAYMENT OF MORTGAGE.   William R. Irvine was indebted to his brother, Jesse Irvine, on a note for $408; and the same brother was his security for $291.   He conveyed his farm of eighty acres to Jesse, on which there was a mortgage of $400, Jesse assuming the payment of the mortgage and of the debt of $291 and of another note of $125 to another brother, and releasing and surrendering his own note of $408, in consideration for the deed.   *Held*, that there was sufficient consideration for the deed, it being shown by oral testimony that the several notes were equal to a fair valuation of the property.

*Appeal from Pike Circuit Court.*—HON. REUBEN F. ROY, Judge.

AFFIRMED.

*Clark & Dempsey* and *Tapley & Fitzgerrell* for appellants.

(1) The findings and judgment are against the law and evidence. *Snyder v. Free*, 114 Mo. 360; *Lionberger*

v. *Baker*, 88 Mo. 447. (2) The court excluded from the jury and disregarded the issue whether the conveyance was made to hinder, delay or defraud creditors. *Nat. Tube Works Co. v. Machine Co.*, 118 Mo. 365; *Sexton v. Anderson*, 95 Mo. 373. (3) Part of the alleged consideration being fictitious renders the conveyance fraudulent. *State ex rel. v. Hope*, 102 Mo. 410; *Seger's Sons v. Thomas Bros.*, 107 Mo. 635; *Boland v. Ross*, 120 Mo. 208. (4) The real consideration mentioned in said deed is not mere recital but is contractual, and the action of the circuit court in admitting in evidence the notes for $408 and the one for $125. had effect to add to, enlarge upon, vary or engraft upon the deed matters not mentioned therein and that had no connection therewith. We think these two pretended debts ought not to have been considered in any way. *Halferty v. Scearce*, 37 S. W. Rep. 113; *Jackson v. Railroad*, 54 Mo. App. 636; *Morgan v. Porter*, 103 Mo. 135; *State ex rel. v. Hoshaw*, 98 Mo. 358; *Pearson v. Carson*, 69 Mo. 550; *Tracy v. The Union Iron Works*, 104 Mo. 193; *Brown v. Morgan*, 56 Mo. App. 382; *Squier v. Evans*, 127 Mo. 514.

*J. D. Hostetter* for respondent.

(1) A debtor has a right to prefer creditors, and even though he is actuated by an intent to hinder and defraud other creditors, and such preferred creditor knows of such intent, and takes the property for the purpose of securing and protecting himself, the transfer is legitimate and valid, even though its effect is to hinder and delay others. *Sexton v. Anderson*, 95 Mo. 373; *Dougherty v. Cooper*, 77 Mo. 529; *Frederick v. Allgaier*, 88 Mo. 601; *Shelley v. Boothe*, 73 Mo. 74; *Albert v. Besel*, 88 Mo. 150; *Freidman ex rel. v. Purcell*, 33 S. W. Rep. 13; *Goddard-Peck Grocer Co. v. McCune*,

122 Mo. 431; *Hollocher v. Hollocher*, 62 Mo. 267; *McConnell v. Brayner*, 63 Mo. 464; *Fontaine v. Savings Institution*, 57 Mo. 561. (2) The consideration clause in a deed is always open to explanation, and it was competent to show what the actual consideration in this case was, whether all the items thereof had been set out in the deed or not. *O'Day v. Conn*, 131 Mo. 321; *Squier v. Evans*, 127 Mo. 514; *Bank v. Aull*, 80 Mo. 201; *Baile v. Insurance Co.*, 73 Mo. 371. (3) A conveyance, in consideration that the grantee pay certain debts of the grantor, which amount to the full value of the land, will not be held fraudulent against other creditors whose debts are not thus included. *Baker v. Harvey*, 34 S. W. Rep. 853; *Nichols v. Ellis*, 98 Mo. 344. (4) In equity cases appellate courts always defer to the findings of the trial court, where the testimony upon which such findings are based is delivered orally in the trial court. *Lins v. Lenhardt*, 127 Mo. 271. (5) Objection was made to the reading of the $408 note in evidence on the ground that "it is irrelevant and incompetent." Which amounts to no objection, and no exceptions were saved to the action of the court in overruling said objection. To entitle a party to a review of the rulings of the trial court on admission of evidence, the specific ground of objection should have been stated therein, and an exception saved to an adverse ruling by the objector. *State v. Miller*, 93 Mo. 263; *State v. Brannum*, 95 Mo. 19; *State v. Hope*, 100 Mo. 347.

GANTT, P. J.—This is a suit in equity to set aside a deed to eighty acres of land made by William R. Irvine to Jesse Irvine.

Plaintiffs are creditors of William R. Irvine who died soon after the execution of the said deed to his brother. They have had their claims, amounting in

the aggregate to $361.15, duly probated against his estate.

The bill charges fraud in the said conveyance in this, to wit, that said pretended conveyance was made without consideration or at least for a nominal sum compared with the value of said land and was fraudulent and void against creditors, as defendant well knew at the time; that said Willian R. Irvine was rendered insolvent by said deed and left no property out of which plaintiffs' judgments could be made other than said land. Defendant for answer denied all charges of fraud and "further answering says it is true that William R. Irvine, a short time prior to his death, conveyed to him by deed the real estate mentioned and described in plaintiffs' petition, and that at the time said conveyance was made, the said William R. Irvine was indebted to one James D. Staley in the sum four hundred dollars and interest accrued thereon which indebtedness is secured by a deed of trust on said real estate and that he was also indebted to one W. B. Brashears in the sum of two hundred and ninety-one and 60-100 dollars and that he, the said defendant, was security on the note given by said William R. Irvine to said Brashears evidencing said indebtedness.

"And that said William R. Irvine was also at said time indebted to defendant in the sum of four hundred and eighty dollars, with interest thereon from October, 1892, up to the time of said conveyance, and that at said time the said William R. Irvine was also indebted to James Irvine, a brother of said William R. Irvine and this defendant, in the sum of one hundred and twenty-five dollars and accrued interest and being so indebted as stated above, and desirous of protecting his said brothers, James Irvine and this defendant, in the said debts due to each of them respectively and in the indebtedness for which defendant was security for said

Wm. R. Irvine as stated above, he, the said William R. Irvine, in good faith made, executed and delivered sai d deed of conveyance which was in good faith accepted by this defendant.

"Defendant further answering says that the consideration for said deed was as follows:

" '*First.* He, the said defendant, assumed the payment of the Staley debt, secured by the deed of trust on real estate as above stated.

" '*Second.* He, the said defendant, assumed the payment of the debt due W. B. Brashears, on which indebtedness defendant was security for said Wm. R. as above stated.

" '*Third.* The indebtedness due from said Wm. R. to the defendant as stated above.

" '*Fourth.* The debt due from said Wm. R. to his brother James Irvine as stated above, which debt defendant agreed to pay and has since paid off and discharged.'

"Defendant says that he has also paid off and discharged the W. B. Brashears debt, and that his own debt against said William R. Irvine is paid off and canceled by said conveyance, and that he has paid a full, fair and reasonable price for said real estate, and that he procured said deed for the sole purpose of protecting himself and his said brother James Irvine in their *bona fide* debts due them from said Wm. R., and in the debt due from said Wm. R. to said W. B. Brashears on which defendant was his security, and that that was also the purpose of said Wm. R. in making said deed, and that there was no intention or design on the part of said Wm. R. or this defendant to defraud the creditors of said Wm. R. in making said conveyance, but that the same was in good faith made and accepted. And now having fully answered defendant asks to be discharged with his costs."

The reply was a general denial. The court submitted to a jury the issue as to what was the true amount of the consideration of the deed from William R. Irvine to Jesse Irvine and whether said consideration was fair and reasonable for such land. The jury by their verdict found that defendant agreed to pay $1,224.60 for the land and that said amount was a reasonable and fair consideration for the land. The court approved the finding of the jury and dismissed the bill.

The evidence tended to establish that the first and second items of the consideration for the deed pleaded in the answer *were set out in full in the body of the deed*, and there could be no question as to the *bona fide* character of these two items, as the record offered in evidence showed the Staley deed of trust on the eighty acre tract to have been given and recorded some months previous to secure the note for $400, which with accrued interest existed at the date of the conveyance under attack, and respondent assumed the payment of the same.

The second item of the consideration was supported by the testimony of W. B. Brashears, a capitalist and money lender of Vandalia, Missouri, who testified that Jesse Irvine was security on a note for Wm. R. Irvine for money loaned Wm. R. Irvine by him (Brashears) which note Jesse Irvine afterward paid off amounting to the sum of $291 at the time of payment.

This note was exhibit number 6 and was dated August 10, 1891, payable to W. B. Brashears, and was given for $250 due twelve months after date and bore eight per cent interest from date and was signed by William Irvine, and *Jesse Irvine* as surety.

The third item of the consideration was a note for $408 given by William R. Irvine to respondent, Jesse

Irvine, dated October 17, 1892, due six months after date and bearing six per cent interest per annum from date. This note was exhibit number 7 and was shown to be signed by Wm. Irvine. And in addition proof of deceased's signature was corroborated by the oral testimony of John Irvine and Otto Henderson.

The fourth item of consideration pleaded in the answer was supported by the testimony of James Irvine and others to the effect that William R. Irvine owed James Irvine, a brother, a note of $125 and as a part of the consideration for this land defendant also assumed that note and took it up. These last two items were not recited in the deed but plaintiff's witness, Mr. Stewart, the notary who took the acknowledgment, testified that he stated to William R. Irvine when he executed the deed that the consideration included these items and he assented to it. John Irvine testified these four items constituted the consideration which Jesse Irvine agreed to pay for the land; that he was present when the agreement was made.

No effort whatever was made to impeach the integrity of the Staley or Brashears debts. The note for $408 held by defendant against W. R. Irvine was not seriously contested. It was admitted and read without objection or exception. There was quite a contest over the Jesse Irvine note of $125, but as already said the jury found it was a *bona fide* debt and was paid by defendant under his agreement with the deceased.

There was much evidence as to the value of the realty conveyed by the deed. Plaintiffs' evidence tending to prove it was worth a little less than $20 per acre, whereas defendant's witnesses estimated it as worth about $13 per acre. The jury found the land was worth about $15.30 per acre.

Defendant was sworn as a witness but upon objection of plaintiffs was excluded.

It is at once evident that little has been left for our consideration. William R. Irvine unquestionably had the right under the laws of Missouri to prefer Jesse Irvine over other creditors. That Jesse Irvine was a *bona fide* creditor to a certain amount does not admit of cavil. That he was surety for William R. to Brashears is not questioned. The note to Staley was secured by a deed of trust recorded long before any of these transactions, and was assumed by defendant in the deed to the land.

The other two items were proven by the oral testimony of witnesses which was accepted and believed by the jury and the court who saw the witnesses and observed their demeanor. We will not, under the circumstances, disturb that finding. It is in such cases that we defer to the judgment of the triers of the fact. We see no sufficient reason for discrediting what the jury and the judge found worthy of belief. These findings establish a consideration of $1,224.60 for the deed which is assaulted for fraud.

This brings us to the other fact relied upon, viz., that the sum paid for the land was grossly inadequate. Plaintiffs are as unfortunate on this branch of their case as the other. They offered seven witnesses to prove the value of the eighty acres and they valued it at about $20 an acre, whereas defendant's nine witnesses living in the immediate vicinity testified its market value did not exceed $13 per acre. The jury weighed all the evidence and found the land was worth $15.30 per acre. That finding was approved by the chancellor who also had the opportunity of hearing and seeing the witnesses. Besides he lived in that circuit and in the nature of things must be better advised than this court as to values of land in that section.

On this question of fact we defer to his judgment in approving the verdict as to the value of the land.

From the foregoing it results that William R. Irvine, aware that he must die in a very short time, and conscious that he is indebted to Jesse, his kinsman, in a note for $408, and that this same kinsman is his surety for $291, and knowing that he only has eighty acres of land which is mortgaged for $400, conceives the idea of securing him from loss as far as he can. He expresses his desire to that brother and his brother agrees to settle these debts and one other debt to another brother for $125 as a consideration for the land. It turns out that this was full value for the property. No element of fraud is discernible in the transaction.

In *Nichols v. Ellis*, 98 Mo. 344, an insolvent father conveyed his land to his sons upon the consideration that they would discharge certain debts to the full value of the land, which they did, and the conveyance was sustained as against other creditors who were not secured. That case has since met the approval of this court in *Baker v. Harvey*, 133 Mo. 653; 34 S. W. Rep. 853.

The imminence of approaching dissolution and the death of the grantor in less than a week later rebut all inference that the conveyance was intended to be in trust for the grantor. So long as there is no fraud in the transaction a debtor in failing circumstances may prefer his kinsman who is his creditor as well as a stranger. While a court of equity will scan the transaction with jealous eyes, preference and relationship alone will not afford sufficient evidence of fraud.

The decree of the circuit court is affirmed. SHERWOOD and BURGESS, JJ., concur.