STAM, Executor, Appellant, v. SMITH et al.

### Division Two, July 2, 1904.

1. **HOMESTEAD: Valuation: Finding of Chancellor.** The appellate court will largely defer to the finding of the chancellor that the homestead did not exceed the statutory value.

2. ———: **Disposition: Creditor's Objection.** The homesteader's creditors have no right to complain of any disposition he may make of the homestead. If he conveyed it to defeat the payment of debts he owed them, they can not complain.

3. **FRAUDULENT CONVEYANCE: Assignee as Witness.** The grantee in a deed made to hinder, delay and defraud plaintiff's testator, the grantor therein being dead, is a competent witness in a suit brought against the grantee to set that deed aside, and to testify to the amount of the consideration for the deed.

4. ———: ———: **Contract in Issue.** In such case "the contract or cause of action at issue and on trial" is, whether the deed was made to hinder, delay or defraud the grantor's creditors, and on the one side are the creditors and on the other the grantees. To recover, the plaintiff must show the execution of the deed and that the grantees took with notice of its fraudulent character. The issue is the fraudulent character of the deed, and to that issue both the creditor and the grantee are alive.

5. ———: **Statements Made After Transfer.** Statements made by the grantor in the deed assailed as fraudulent, after the delivery of the deed, in the absence of the grantees, are incompetent evidence against them.

Appeal from St. Francois Circuit Court.—*Hon. James D. Fox*, Judge.

AFFIRMED.

*George M. Wilson* and *Jerry B. Burks* for appellant.

(1)   Under the testimony plaintiff was entitled to decree setting aside the deed executed by Murphy to defendant, Lou M. Smith.  According to her own testimony, if true, the transaction was a sale, not a case of a creditor honestly protecting herself to the extent of her claim.  Smit v. Strauss Saddlery Co., 64 Mo. App. 120; Cooper v. Stanley, 40 Mo. App. 138; Frederick v. Allgaier, 88 Mo. 598; McVeagh v. Baxter, 82 Mo. 522; State to use v. Mason, 112 Mo. 382; Snyder v. Free, 114 Mo. 361; Garische v. MacDonald, 103 Mo. 11; Martin v. Estes, 132 Mo. 409; Ames v. Gilmore, 59 Mo. 537.  (a) The only proof, worthy of belief, of a consideration paid for the property, was the amount paid by defendants in satisfaction of the McCormick deed of trust, $326.10.   This inadequacy of price for the property, over and above homestead exemptions, is of itself a badge of fraud.  This, together with the relationship of the parties to the transaction, their statements, acts and conduct, clearly shows a transaction which actually bristles with fraud.  Van Raalte v. Harrington, 101 Mo. 608; Blacker & Co. v. Ryan, 65 Mo. App. 239; Massey v. Young, 73 Mo. 260; Renny v. Williams, 89 Mo. 145; Bank of Versailles v. Guthrey, 127 Mo. 193.  (b) That Zebulon Murphy intended to defraud plaintiff's testator, and that his daughter, the grantee in the deed, knew it, was abundantly shown by the declarations and admissions of Murphy and his daughter after the transaction.  The statements made by Zebulon Murphy, while in possession of the land, to his brother Bart, and others, that the conveyance was to beat the Parkhurst debt, was competent not only against himself but against his grantee.   State ex rel. v. Durant, 53 Mo. App. 500; Boyd v. Jones, 60 Mo. 454; Meredith v. Wilkinson, 31 Mo. App. 9; Bagnell v. Bank, 76 Mo. App. 126.   (2)   The court erred in permitting codefendant, Lou M. Smith, to testify as a witness, over the objection of plaintiff's counsel, she being a party to the

contract in issue and on trial, the other original party to the contract, Zebulon Murphy, being dead. R. S. 1899, sec. 4652; Meier v. Thieman, 90 Mo. 444; Ashbrook v. Letcher, 41 Mo. App. 375; Teats v. Flanders, 118 Mo. 670; Chapman v. Dougherty, 87 Mo. 626; Gunn v. Thurston, 130 Mo. 344; Jones v. Burden, 56 Mo. App. 204; Bagnell v. Bank, 76 Mo. App. 125; Davis v. Ward, 161 Mo. 29; Baker v. Reed, 162 Mo. 355. Nor does the fact that Mrs. Zebulon Murphy was alive at the time of the trial alter or change the rule. Messmer v. McCray, 113 Mo. 389. (3) Codefendant, John Smith, being the husband of Lou M. Smith, was incompetent to testify, and the court erred in permitting him so to do. He was incompetent at common law and the statute does not qualify him. R. S. 1899, sec. 4656; Reno v. Kingsbury, 39 Mo. App. 244; Callahan v. Billat, 68 Mo. App. 435.

*Rufus C. Tucker* and *B. H. Marbury* for respondents.

(1) The transfer will be valid if it is made in good faith, although it includes all the debtor's property; and does not warrant the inference that the grantee is aware of the debtor's insolvency. Carson v. Murray, 15 Mo. 378; Stewart v. Dunham, 115 U. S. 61; Sibley v. Hood, 3 Mo. 290; Richardson v. Marqueze, 59 Miss. 80; 8 Am. and Eng. Ency. of Law, 768; Bump on Fraud. Conv. (2 Ed.), p. 35; Wait on Fraud. Conv. (2 Ed.), p. 324. (2) To justify the inference of fraud from the inadequacy of the purchase-price alone, the consideration must be so clearly below the market value as to strike the understanding at once with the conviction that such a sale never could have been made in good faith. Briant v. Jackson, 99 Mo. 598; Jones v. Geery, 153 Mo. 476; Farrell & Co. v. Meyer & Wolff, 67 Mo. App. 566; Robinson v. Dryden, 118 Mo. 540; Kincaid v. Irvine, 140 Mo. 615; Bump on Fraud. Conv. (2 Ed.), pp. 43, 189, 289 and 587; Wait on Fraud. Conv.

(2 Ed.), p. 326. (3) Possession, after the sale of real estate, does not, *per se,* raise a presumption of fraud; it must be inconsistent with the sale, and repugnant to it in terms or operation, before it raises a just presumption of fraud. Robinson v. Dryden, 118 Mo. 540; Turner v. Hall, 60 Mo. 275; King v. Moon, 45 Mo. 551; Stewart v. Thomas, 35 Mo. 208; Bump on Fraud. Conv. (2 Ed.), p. 122; Wait on Fraud. Conv. (2 Ed.), p. 368. (4) To render a conveyance fraudulent as against creditors, there must have been mutuality of participation in the fraudulent intent, on the part of both the grantor and the grantee. Kincaid v. Irvine, 140 Mo. 615; Schawacker v. Leedington, 77 Mo. App. 415; Smith v. S. S. Co., 64 Mo. App. 120; Bank v. Russey, 74 Mo. App. 656; Sexton v. Anderson, 95 Mo. 373; Baker v. Harvey, 133 Mo. 653; Bump. on Fraud. Conv. (2 Ed.), p. 194; Wait on Fraud. Conv. (2 Ed.), p. 283. (5) A debtor, though in failing circumstances, may prefer one of his creditors over another, and in so doing he may secure such preferred creditors to the exclusion of all others, provided only that it be done bona fide. Kincaid v. Irvine, 140 Mo. 615; Drug Co. v. White, 165 Mo. 136; Milling Co. v. Burnda, 152 Mo. 350; Milling Co. v. Commission Co., 128 Mo. 488; Hart v. Leete, 104 Mo. 317; Hargadine v. Henderson, 97 Mo. 375; Shelby v. Booth, 73 Mo. 74; Bump on Fraud. Conv. (2 Ed.), p. 178; Wait on Fraud. Conv. (2 Ed.), p. 530. (6) The homestead not being subject to the right of creditors, its conveyance can not be fraudulent as to them. Rose v. Smith, 167 Mo. 81; Bartels v. Kinnenger, 144 Mo. 370; Macke v. Byrd, 131 Mo. 682; Grimes v. Portman, 99 Mo. 229; Thompson on Homesteads, pp. 352 to 394; Bump on Fraud. Conv. (2 Ed.), p. 242; Wait on Fraud. Conv. (2 Ed.), p. 71. (7) The spirit of section 4652 is not to close the mouth of the living party to a contract, where the other party is dead, under all conditions and in every circumstance, but to close his mouth where to permit him to speak would give him an advantage which

he would not have were the other party living. Henry v. Buddecke, 81 Mo. App. 360; Bank v. Payne, 111 Mo. 291; Brim v. Fleming, 135 Mo. 597; Orr v. Rodes, 101 Mo. 387; Coughlin v. Haussler, 50 Mo. 126.

GANTT, P. J.—This is a suit in equity to set aside a deed from Zebulon Murphy to Mrs. Lucinda Smith on the ground that it was made to hinder, delay and defraud the creditors of said Murphy.

The plaintiff, as executor of Mr. Parkhurst, in the lifetime of said Zebulon Murphy, obtained a judgment on the thirteenth of November, 1896, in the circuit court of St. Francois county for $173.85; Zebulon Murphy died about January 1, 1897, and after his death the said judgment was exhibited and classed against his estate. It was alleged that said Zebulon Murphy at the time of his death was indebted to a considerable amount to J. B. Murphy, Dr. George W. Williams and John T. Burks.

On the fourteenth day of July, 1896, Zebulon Murphy and his wife, Amanda, conveyed their homestead, consisting of one hundred and eleven acres in St. Francois county and described as the north part of the southeast quarter of section 19, township 36, range 6 east, and two hundred acres, the northeast quarter and the northwest quarter of the southeast quarter of section 10, township 34, range 5 east, also in said county, to their daughter Lucinda M. Smith, for the recited consideration of $2,000, and the further consideration that Mrs. Smith should support her said parents during their natural lives. This deed was duly recorded July 16, 1896, and is the conveyance assailed by this suit for fraud. The answer denied all fraud; alleged that the consideration was truly stated and the money consideration paid and that the defendants have furnished Zebulon Murphy support until his death in January, 1897, and had been and were continuing to support Mrs. Murphy; that the one hundred and eleven acres was the

homestead of Zebulon Murphy, acquired long prior to the incurring of any of the debts alleged to be owing by him at the time of his death and duly recorded in the office of the recorder of deeds and did not exceed the value of fifteen hundred dollars, and the same was exempt from attachment or execution. The replication denied the new matter alleged in the answer. The cause was heard and resulted in a finding for defendants and a dismissal of the bill. From that decree plaintiff appeals.

I. It is conceded that Zebulon Murphy and his wife had a homestead in the one hundred and eleven acres, but plaintiff insists that this tract exceeded $1,500 in value and that as to such excess the conveyance to Mrs. Smith was fraudulent. On this point the proof of the value was heard before the circuit court. The testimony was conflicting. There was no special finding made as to the value of the homestead. This was a question of fact. The witnesses were all before the trial judge and he was better able to weigh their testimony than we possibly can be, especially as to the value of land in that country, a matter upon which the judge of that circuit would naturally have a more correct judgment than this court, and it is a case in which this court will largely defer to the judgment of the chancellor on the circuit. As there was a general finding for the defendant, it may be presumed that the court found as a matter of fact that the homestead of one hundred and eleven acres did not exceed in value fifteen hundred dollars. As to the homestead, the creditors of Zebulon Murphy had no interest whatever. It could not be subjected to their debts, and they have no right to complain of any disposition that the owner made of it. [Bank of Versailles v. Guthrey, 127 Mo. 189; Creech v. Childers, 156 Mo. 338; Macke v. Byrd, 131 Mo. 682; Rose v. Smith, 167 Mo. 81.]

There can be no fraudulent conveyance of property as to a creditor, when he has no right to subject said

property to his debt. [Davis v. Land, 88 Mo. 436; Cox v. Wilder, 2 Dillon C. C. 46; Vogler v. Montgomery, 54 Mo. 584.] Nor is the fact that Zebulon Murphy remained on the land conclusive of fraud, the deed being of record. [Baker v. Harvey, 133 Mo. 662.] As to the homestead there can be no doubt as to the propriety of the judgment dismissing the bill as to that.

II. Whether there was error as to the Doe Run land must depend to a large extent upon the errors assigned as to the competency of Mrs. and Mr. Smith, the purchasers, as witnesses as to the consideration paid for the land. Plaintiffs insist that neither of them was a competent witness, as to the transaction between them and Zebulon Murphy, the latter being dead at the time of the trial.

Section 4652, Revised Statutes 1899, provides that: "No person shall be disqualified as a witness in any civil suit or proceeding at law or in equity, by reason of his interest in the event of the same as a party or otherwise, but such interest may be shown for the purpose of affecting his credibility: Provided, that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him, and no party to such suit or proceeding whose right of action is derived to him from one who is, or if living would be, subject to the foregoing disqualification, shall be admitted to testify in his own favor, except as in this section is provided, and where an executor or administrator is a party, the other party shall not be admitted to testify in his own favor, unless the contract in issue was originally made with a person who is living and competent to testify, except as to such acts and contracts as have been done or made since the probate of the will or the appointment of the administrator."

This court in construing this statute has always given as "the reason of the statutory prohibition the prevention of one person testifying where death has sealed the lips of his adversary." It is evident there is no controversy here between Zebulon Murphy or his heirs or administrators, on one side, and Mrs. Smith, his daughter, on the other, as to the consideration of his deed to her. That deed is not challenged by Zebulon Murphy, nor by his heirs. The execution of the deed is not only admitted, but the plaintiff charges its execution and record. Even if that deed is fraudulent, as made to hinder or defeat creditors, Zebulon Murphy, if alive, would be estopped from setting it aside on the ground of his own fraud, and so are his heirs and his administrator. His heirs are not parties to the suit. Can it be said that he is *"the other party"* to this suit within the meaning of this statute so as to prevent his grantee from testifying as to the payment of the consideration therein named? Neither Mrs. Smith nor her husband testified to any fact about which there is any controversy between her father and herself. Her testimony was not to sustain the delivery of the deed or to deny its delivery. She is not asserting any right which is or can be denied by her father, his heirs, or administrators. [Merry v. Fremon, 44 Mo. 518; Crook v. Tull, 111 Mo. 283; Jackman v. Robinson, 64 Mo. 292; Roan v. Winn, 93 Mo. 511; George v. Williamson, 26 Mo. 190.]

The plaintiff is not seeking to avail himself as assignee of any right secured by Zebulon Murphy by the deed, or the consideration agreed to be paid thereby for said lands. On the contrary, he is proceeding on the theory that it was a fraudulent conveyance and that no right accrued under it to Mrs. Smith. This suit is not upon the contract evidenced by the deed and its recitals and hence that contract, in the meaning of the statute, is not *"in issue and on trial."* Plaintiff's rights lie wholly *dehors* that contract and outside of the mutual

stipulations of the parties to that deed, and depends upon showing it was made to defeat creditors.

What is "the contract or cause of action in issue and on trial?" Evidently it is whether the deed was made to hinder, delay or defraud Zebulon Murphy's creditors or not. In this controversy, on the one side are the creditors, and on the other the grantee in the deed. They are both alive. In Bradley v. West, 68 Mo. 69, and Chapman v. Dougherty, 87 Mo. 617, which overruled Bradley v. West, this court commented on the fact that our statute, section 4652, was identical with the Vermont statute, and the decisions of the Supreme Court of that State were cited as to the proper construction of the words, "contract or cause of action in issue and on trial" and "other party," and it was ruled in Chapman v. Dougherty that in an action of ejectment by the devisee of land whose testator held under a deed from defendant, the latter was incompetent to testify that said deed was never delivered. In that case the devisee, claiming directly under the deed of the defendant, stood in the shoes of his testator who was dead, and the deed (or contract) was directly in issue, and as the testator, who was the grantee in that deed, was dead, it was unquestionably correctly held that the defendant was the opposite party, and the other party to that deed being dead, the defendant was incompetent to testify and destroy the deed in the hands of a devisee of the grantee in the deed. There the devisee's title was based upon the deed of defendant and defendant's mouth was properly closed to deny the delivery of the deed as against the devisee of his grantee. But in this case plaintiff is asserting no rights under or by virtue of the deed from Zebulon Murphy to Mrs. Smith. To recover he must show the execution of the deed to Mrs. Smith, and that she took it with notice of the fraudulent purpose of her father or assisted in the fraud. She is not denying the deed or any obligation it imposes, neither is her evidence necessary to prove its execution

or delivery. She simply denies the fraud with which plaintiff charges her, and, as to that issue, both the plaintiff and defendant are alive. The proof of the payment of the consideration involves no question of veracity between her and her father.

In Downs v. Belden, 46 Vt. 674, the facts were these: Downs purchased some live stock from James Belden in Massachusetts and paid him $240 therefor. Downs lived at Belden's house until Belden died; by agreement the property remained on Belden's place. Buel Belden, a son of James Belden, testified he bought the same stock from his father later on without notice of Downs' purchase, and after his father's death, removed the property to Vermont. Downs brought an action of trover against Buel Belden. Downs offered himself as a witness to prove his purchase from James Belden and it was objected that he was not competent because James Belden was dead. The circuit court admitted him as a competent witness. Chief Justice PIERPOINT said: "This is an action of trover to recover the value of property in question. The cause of action is the unlawful conversion by defendant. The parties to this cause of action are both living; hence the case does not come within *the letter* of the statute, as in Hollister v. Young, 41 Vt. 156. James Belden's estate is in no sense a party to this suit, or in any way interested in, or to be affected by, the result, and for that reason the case does not come within *the spirit* of the statute, or the principle recognized in Fitzsimmons v. Southwick, 38 Vt. 509, and Cheney v. Pierce, 38 Vt. 515, and that class of cases. We think that the purchase of the property by the plaintiff of James Belden was a matter collateral to the cause of action in issue and on trial. It was material and admissible as bearing upon the question involved, but it did not constitute the basis of the action or of the defense, and comes clearly within the principle recognized in Bank v. Scofield, 39 Vt. 590;

Cole v. Shurtleff, 41 Vt. 311. There was no error in admitting the testimony.''

That case was afterwards followed in Banister v. Ovitt, 64 Vt. 580. In this suit plaintiff must recover, if at all, upon proof not only that Zebulon Murphy conveyed his property to defraud his creditors, but that Mrs. Smith *knew* of his purpose to do so, or *was aiding him to do so*. The cause of action being then in favor of living plaintiffs and against a living defendant, we think it must be held that no ''opposite party'' to Mrs. Smith is dead, and that she was a competent witness, and the circuit court correctly admitted her to testify.

Proceeding now to the evidence as to the Doe Run property included in the deed. The testimony shows that land was mortgaged to General McCormick by Zebulon Murphy, and Mrs. McCormick testified that Mrs. Smith paid off that mortgage. It amounted to $326.10 at the time it was paid in July, 1896, and General McCormick satisfied the mortgage on the record.

Mr. Alexander, the clerk, testified that Mr. Murphy, Mrs. Smith and General McCormick all came to his office to satisfy the mortgage and Mr. Murphy stated that his daughter was paying some of his debts and he was deeding his property to his daughter. Mrs. Smith testified she knew nothing of any of the claims which had been probated against her father's estate or of any fraud on his part. Her father deeded her the land in payment of debts he owed her and her husband, and to support him and her mother the balance of their days.

John Smith testified to various sums of money furnished by him to his father-in-law, from sometime in 1890 up to and including 1896; that the whole amounted to $2,002; that he was to take possession of the homestead in January, 1897; that since Mr. Murphy's death in January, 1897, he and his wife had taken care of and maintained Mrs. Murphy, the widow of Zebulon Murphy, and it was reasonably worth $680. In his evidence

he accounted for the moneys which he had furnished and the means by which he earned it.

To rebut this evidence plaintiff offered witnesses who testified that defendant John Smith was an ordinary farmer. Left Missouri in 1890. Lived on Zebulon Murphy's place a year and ran the farm. Sold out everything before he went to Texas. Afterwards returned here; stayed only a short time and returned to Texas, and went to Pine Bluff, Arkansas.

Bass Murphy testified he rented Zebulon Murphy's farm five years before his death, and Mrs. Smith did not notify him what disposition he should make of the proceeds after July, 1896.

W. H. Young testified he was administrator of Zebulon Murphy's estate, but no property came into his hands; he only inventoried the lands deeded to Mrs. Smith July 14, 1896; he acted as clerk of a sale John Smith had before he went to Texas in 1891; the amount of the sale was $300 or $400. After Smith came back from Texas in 1891 or 1892 he told witness he was "busted."

Bart Murphy testified it was considered that his brother Zebulon Murphy could not pay his debts; that Mrs. Smith said after she got her deed that the land ought to be worth $25 an acre; that he talked with his brother in December before he died in January, 1897, after the deed was made, and Zebulon said that Lou (Mrs. Smith) had paid General McCormick's mortgage of $325, and that was all she had in it, and the land was to be turned back when he got an opportunity to sell, and as for his homestead he said, "I put that out of my hands to beat the Parkhurst debt."

John Smith in 1890 or 1891 said to witnesses that the old man would never be able to redeem his property; talked about it years ago.

Mrs. Bart Murphy testified that Mrs. Smith told her her father gave her the home place, but she was to give him a deed back for the Doe Run land; she said

she paid $325 on the mortgage. She was going to sell the land and pay all her father owed; she told Bart she might have to let the hay go on what her father owed. *Bart said his notes were barred.*

Dr. Williams had a $20 note about twenty years old. Mr. Young considered the home place worth $25 an acre.

Several years after the administration Smith said he thought Bart's claim was outlawed. The house on the homestead was a log house. Fences were not in good repair. Fifty or sixty acres in cultivation.

Jesse M. Elvins considered the Doe Run land ought to bring $5 an acre, but didn't know that it would bring $2 an acre. Mr. Murphy asked him to sell it, but he "didn't like it and said to him, 'Your land hasn't any timber on it.' I says hold on to it." "*I don't think he* could have sold it for more than $2 an acre."

William Jones testified he wouldn't give over $3 an acre for the Doe Run land. Nothing but boulders in sight and very poor.

Ed Hahn thought the home place was worth $25 an acre. There was practically no barn on it and fences were run down.

From this summary it appears that the Doe Run land was worth not exceeding $2 to $3 an acre. Mrs. Smith paid off a first mortgage on it of $326.10 in July, 1896, leaving a margin of only about $75 if it is valued at Mr. Elvins's estimate, and he was a real estate man, and knew more about it than any other witness. But if placed at $3 an acre the margin would be only $174, and it was wholly non-productive, and when to the mortgage the interest on the mortgage is added, it is apparent that the equity after paying it would be of little value.

The contention of plaintiff is that Mrs. Smith and her husband did not have the means with which to furnish the moneys they testified they had furnished Zebulon Murphy from 1890 up to and including 1896. As

to this, Smith, the husband, testified that while in Texas he worked at his trade as a carpenter and on the railroad as a fireman and that he earned some months as much as $80 and generally averaged $55 a month; that he had no family except himself and wife and they both worked and earned money. He gave a detailed statement of the amounts and times when he loaned Zebulon Murphy the money. This testimony was not contradicted save by proof that before he left Missouri in 1890 he was a man of small means and when he sold out only had $400 or $500 and that he said when he returned from Texas the first time that he was "busted."

The testimony of Bart Murphy and his wife as to statements made to them after the deed was delivered and in the absence of defendants was clearly inadmissible to affect Mrs. Smith's title. The trial judge had all the witnesses before him; saw their demeanor on the witness stand and their manner of testifying and in the absence of any testimony contradicting Mr. Smith as to his earnings, he was clearly better able to judge of their credibility than we are, and we see nothing in the testimony itself that would justify us in reversing his findings of the facts. Moreover, there is an element of staleness in the demand of plaintiff and the other demands in evidence that does not commend them to a court of equity. The only large claim, that of Bart Murphy, was kept alive by indorsing a credit of ten dollars for pasturing a cow by Zebulon Murphy for Bart, his brother. Had the administrator contested this claim on the ground that it was barred it would seem it ought not to have been allowed, as Bart Murphy had repeatedly said it was outlawed. No effort was ever made to reduce this or any other claim except the Parkhurst claim to judgment during the lifetime of Zebulon Murphy. The administration evidently was had simply for the purpose of allowing these claims. There was no personal estate subject to administration and obviously the administrator had nothing to do with the lands his intes-

tate had conveyed. He could not assail the conveyance for fraud on the part of his intestate as has been often decided by this court.

In view of the whole record we see no ground for reversing the judgment of the circuit court and its judgment is affirmed.

*Burgess, J.*, concurs; *Fox, J.*, having presided on the circuit, takes no part in this decision.