BANK OF NEW CAMBRIA, a Corporation, Respondent, v. LAWRENCE T. BRIGGS and IRENE BRIGGS and MARVIN C. HOPPER, Appellants, No. 41965—236 S. W. (2d) 289.

Division One, February 12, 1951.

724

*Errol Joyce* and *Jayne & Jayne* for appellants.

*James Glenn* for respondent.

[290]  VAN OSDOL, C.—Action by a judgment creditor, plaintiff, to set aside and cancel two allegedly fraudulent conveyances by which conveyances, through a straw party, a tract of 114.97 acres of described land in Linn County was conveyed by defendant Lawrence T. Briggs, judgment debtor, to himself and his wife, defendant Irene Briggs.  The trial court found the issues for plaintiff, and rendered a judgment and decree cancelling the convey-

ances and determining the property (a homestead being recognized in defendant husband) to be subject to the lien of plaintiff's judgment. Defendants have appealed.

Defendants-appellants by answer had alleged that the conveyances involved whereby defendants, the husband and wife, acquired the joint title were made pursuant to agreements long existing between such defendants, by which agreements defendant husband was obligated to vest title in the husband and wife jointly because defendant wife had furnished more than eighty per centum of the money necessary to pay off liens against the land; that, when the land was acquired, it was agreed, contemplated and intended that the title should be vested in defendants, husband and wife, although by mistake of the scrivener the deeds were written naming only Lawrence T. Briggs as grantee; and that subsequently it was understood and agreed between them that, notwithstanding such deed to the husband only, the property was jointly owned by the husband and wife, and title should be transferred to them jointly by conveyances to be executed at some convenient time.

Defendant husband, Lawrence T. Briggs, bought the described land (and an additional forty acres subsequently sold) from the heirs of his father in 1936. Defendant husband paid the other heirs for the property (then valued at $2200, including the value of his interest as an heir), having borrowed $900 from two sisters and a brother, and $1000 from one Hughes. All of the conveyances from the heirs were to defendant husband as sole grantee. The Hughes note, dated March 3, 1936, was secured by a deed of trust on the described land. The Hughes note was paid in 1938, and the deed of trust released. There was evidence tending to show the Hughes note was paid by check given by defendant wife drawn upon her personal account with the Bucklin State Bank; and evidence introduced tends to further show the husband's indebtedness, aggregating $900, to the husband's sisters and brother was paid by defendant wife by checks drawn upon her personal account. Defendants testified that the source of the wife's funds, out of which these debts were paid, was her inheritance distributed from her father's estate.

Long after the acquisition of the land, defendant Lawrence T. Briggs became indebted to the plaintiff-respondent, Bank of New Cambria, the indebtedness being evidenced by various unsecured notes in aggregate principal $2425. In early 1948, [291] the officers of plaintiff Bank were vainly insisting that defendant husband secure his indebtedness by a deed of trust upon the described land; and, on April 27, 1948, by letter, plaintiff Bank declined a request to make a further advance of credit. The conveyances involved in the instant action were dated April 28, 1948. The recited consideration was one dollar and "exchange of deeds." Admittedly, the convey-

ances rendered defendant Lawrence T. Briggs insolvent. Plaintiff instituted an action upon the unsecured notes and recovered judgment, November 8, 1948, in the Circuit Court of Linn County. An execution was returned *nulla bona,* and the plaintiff Bank instituted the instant action. Further facts will be stated in the course of this opinion.

In the instant case, an equitable action, the appellate court determines the cause *de novo,* weighing the evidence introduced upon the factual issues; but the appellate court will usually defer to the findings of the trial chancellor where there is conflicting verbal testimony involving the judging of the credibility of the witnesses who appeared before him. Cobble v. Garrison, Mo. Sup., 219 S. W. 2d 393.

Plaintiff Bank had the burden of proof of fraud. Oetting v. Green, 350 Mo. 457, 166 S. W. 2d 548; Castorina v. Herrmann, 340 Mo. 1026, 104 S. W. 2d 297. But fraud, like any other fact, may be established by circumstantial evidence. There are circumstances which have come to be recognized as indicia or badges of fraud, one of which circumstances alone may not prove fraud, but may warrant an inference of fraud, especially where there is a concurrence of several indicia of fraud. Conrad v. Diehl, 344 Mo. 811, 129 S. W. 2d 870; Russell v. Franks, 343 Mo. 159, 120 S. W. 2d 37; Castorina v. Herrmann, supra; Brennecke v. Riemann, Mo. Sup., 102 S. W. 2d 874; Toomay v. Graham, Mo. App., 151 S. W. 2d 119. The facts or circumstances recognized as indicia of fraud are numerous. Pertinent to the instant case, it may be said the fact that a transfer or conveyance disposes of all of a debtor's property is material on the question of intent. Toomay v. Graham, supra. And it is recognized that the confidential or close relationship of the parties; transactions without the usual course of doing business; transfers anticipating the enforcement of creditors' claims; and incorrect statements relating to the consideration for transfers are circumstances to be considered. Castorina v. Herrmann, supra. It is the rule in this State that transactions between husband and wife to the prejudice of the husband's creditors are looked upon with suspicion. Their good faith must be so clearly shown that there can be no reasonable doubt of the honesty of the questioned transactions. Oetting v. Green, supra; Conrad v. Diehl, supra; Friedel v. Bailey, 329 Mo. 22, 44 S. W. 2d 9; Balz v. Nelson, 171 Mo. 682, 72 S. W. 527.

It was neither alleged nor contended that defendant wife and husband sustained a creditor and debtor relation. Defendants' answer alleged the questioned conveyances were executed pursuant to an agreement (existing at the time the described land was acquired) that the title should be vested in the husband and wife, and, because of a mistake of a scrivener, title was vested in the husband

individually. Nevertheless, the evidence shows the defendants, husband and wife, knew, at the time the Hughes note was paid in 1938, that the title was vested in the husband only; and there was no transfer of the title to the husband and wife jointly until in 1948.

It was admitted by an officer of plaintiff Bank that defendant husband, in 1947, had asked the Bank's officer to prepare deeds vesting the title in the husband and wife jointly, but, due to some cause not fully explained in the record, the conveyances were not executed. Defendant husband testified that he had told the Bank's officer "that the farm was in my name but my wife had paid for the farm and that we wanted a deed made to both of us." The Bank's officer testified defendant husband "did not tell me that his wife's money was in it." At that time and thereafter until in early 1948, defendant was being extended further credit on the bases of his signed financial statements, including the statement that [292] the title to the described land was vested in him "individually." The last of the financial statements was of January 26, 1948.

Plaintiff wife, upon at least two occasions, had been present at the Bank's offices and within the hearing of her husband's discussions with the Bank's officers relating to the husband's "line of credit." She also saw and talked with members of Bank's "discount committee" when they came upon the described land to inspect a part thereof offered by defendant husband to secure his notes. She did not mention any claim of title or of any equitable interest in the described land. This was because she "never was asked." In such circumstances, it would seem the wife would have made known the husband's obligation or agreement, if any, to recognize that the wife had an interest in the property. Indeed, the defendant wife in her testimony stated that she and her husband had discussed "that we would have a deed made to both of us" at the time of the purchase of the land. She did not substantiate the allegation that there was any agreement, written or otherwise, that the property was to be vested in the husband and wife by the entirety because of her payments of her husband's indebtedness in 1938, although she said they had thereafter talked of making a joint deed "different times off and on, we discussed it several times." Ordinarily, had there been such an agreement, a transfer of title would have been made in 1938. Since 1936, and until the day after the Bank's letter of April 27, 1948, the title to the described land remained vested in defendant husband.

The long delay in effectuating the alleged agreement; the obtention of credit, meanwhile, by the husband upon the strength of his own title; and the execution of the questioned conveyances at the time the Bank was pressing for security of the husband's unsecured

notes tends to show bad faith and the purpose to hinder, delay and defraud their creditor, plaintiff Bank. Compare Balz v. Nelson, supra.

Deferring to the trial chancellor's findings upon the conflicting verbal testimony, the evidence is sufficient in tending to clearly show that, although there was some discussion at different times "off and on" between the husband and wife relating to a transfer to themselves as tenants by the entirety, the transfers of April 28, 1948, were not referable to any obligation arising out of the payment of the husband's indebtedness in 1938, but were referable to and in contemplation of plaintiff Bank's refusal to extend further credit April 27, 1948, and the probable action of Bank to enforce the collection of defendant husband's unsecured notes.

The judgment and finding that the conveyances in question were fraudulent and void as to plaintiff Bank should be affirmed.

■ Defendants-appellants further contend the trial court's judgment was erroneous in failing to provide for the appointment of commissioners to set out the homestead, the court having inferentially found that the value of the described land was in excess of the value of the homestead interest. In this connection we note the judgment and decree in the instant action did not include a money judgment upon defendant husband's unsecured indebtedness to the plaintiff Bank. The indebtedness to plaintiff Bank had theretofore been reduced to judgment in the Circuit Court of Linn County. When and if an alias execution is issued on the latter judgment, we presume the rights of all the parties, defendants and plaintiff, will be protected. See Section 609 R. S. 1939, Mo. R. S. A. § 609, now Section 513.480 R. S. 1949.

But we must further examine the part of the trial court's judgment and decree by which it was determined a homestead right or interest is presently vested in defendant husband. Prior to April 28, 1948, the date of the questioned conveyances, defendant husband was vested with a homestead interest in the described land. We are of the opinion that the homestead became vested in defendants, husband and wife, by the conveyance of April 28, 1948.

The indebtedness to plaintiff Bank was incurred long after defendant husband acquired title to the described land, and the evidence shows the residence building [293] on the property has been continuously occupied as the dwelling place and home of defendant, and his wife and children, for about thirteen years. The evidence justifies the conclusion that the value of the described land was greatly in excess of the value of the homestead. There was testimony that the value of the land, in April 1948, was "around five or six thousand dollars." Although, as the trial court found, the conveyances were void as to plaintiff Bank, yet the conveyances were valid in transferring the title to the property, including the home-

stead interest, from defendant husband to himself and wife. It is a settled rule in this State that the transfer of property in fraud of creditors, while void as to them, is binding on the parties and those in privity with them. Stierlin v. Teschemacher, 333 Mo. 1208, 64 S. W. 2d 647; Charles v. White, 214 Mo. 187, 112 S. W. 545; Van Winkle v. McKee, 7 Mo. 435.

It is also a general rule, frequently recognized by this court, that the conveyance of a homestead cannot be fraudulent as against .creditors, whether the conveyance be to the debtor's wife or to a third person, and that creditors can have no recourse against it. It is no concern of creditors what a debtor does with his homestead, inasmuch as the homestead may not be subjected to creditors' claims. And title to the described land in excess of the homestead interest is of no concern to plaintiff Bank should its judgment be satisfied. We believe the trial court's decree, in recognizing the homestead interest in defendant husband only, deprived defendant wife of her estate as tenant by the entirety of the described land to the extent of the homestead interest, which interest, and the freehold estate, the defendant husband could and did validly vest in her as a tenant by the entirety, although, as the trial court properly found, the conveyance of the land in excess of the homestead interest is to be considered fraudulent as to plaintiff. Blattel v. Stallings, 346 Mo. 450, 142 S. W. 2d 9; Brennecke v. Riemann, supra; May v. Gibler, 319 Mo. 672, 4 S. W. 2d 769; Reed Bros. v. Nicholson, 189 Mo. 396, 88 S. W. 71; Stam v. Smith, 183 Mo. 464, 81 S. W. 1217; State ex rel. Meinzer v. Diveling, 66 Mo. 375. See also Muster v. Mallen, Mo. Sup., 163 S. W. 2d 578. In this particular respect the judgment and decree should be modified.

As modified the judgment and decree should be affirmed. It is so ordered. *Lozier* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.