James L. COOPER, Plaintiff-Respondent,

v.

V. R. FREER and Ethel Freer, Defendant-Appellants.

R. Y. Hopkins, Margaret Hopkins and Transportation Service Company, Garnishee,

Ozark Air Lines, Inc., Garnishee.

Nos. 8322, 8323.

Springfield Court of Appeals.

Missouri.

Dec. 10, 1964.

Henry Warten, Emerson Foulke, Joplin, for defendant-appellants.

Max Patten, Joplin, for plaintiff-respondent.

RUARK, Presiding Judge.

These are appeals from two separate judgments holding separate assignments and transfers of (1) a leasehold interest with a hangar situate thereon from V. R. Freer to V. R. Freer and Ethel Freer, and (2) a Cessna airplane from V. R. Freer to V. R. Freer and/or Ethel L. Freer (tenants by the entirety), to be fraudulent and void as to plaintiff, now respondent, James L. Cooper.

Litigation between plaintiff-respondent Cooper and defendant-appellant V. R. Freer has followed a long and tortuous course. It commenced in *September 1949,* when Cooper brought suit against Freer, who was charged (in the amended petition) as doing business under the name of "Freer Construction Company." By this suit Cooper claimed a share of the profits from the construction company business and prayed an accounting for the period extending from February 1947 to July 25, 1949. On *September 15, 1952,* judgment was rendered ordering the accounting and appointing a referee. On *December 1, 1958,* the referee filed report in which he found Freer to be indebted to Cooper in the sum of $6,857.11, plus interest. On March 14, 1960, the court sustained only one of Freer's exceptions to the referee's report (that which allowed Cooper a share in the rentals received from machinery owned by Freer) and overruled and denied all others. Final judgment was rendered in favor of Cooper and against Freer in the total sum of $7,368.84. Executions were issued, the plane and hangar property were levied upon and sold in partial satisfaction; and out of such proceedings arose the present controversies.

On *March 11, 1954,* V. R. Freer bought the Cessna airplane (price seven thousand dollars) and took title in his own name. In *January 1955,* he took a sublease agreement on certain land at the Joplin airport. This also was taken in his name. Later

this sublease agreement was amended (in order to change the description) and the amendment was likewise signed by V. R. Freer as owner. After the sublease was obtained, a hangar was built on the land. On *March 12, 1959,* (which was after the referee's report had been filed), V. R. Freer executed an assignment of the airplane to "V. R. Freer and/or Ethel L. Freer, tenants by the entirety." The consideration stated was "one or more dollars." V. R. Freer's notarial acknowledgment to this instrument was taken by his wife Ethel who signed as "E. L. Freer." On *December 16, 1959,* V. R. Freer, in consideration of "one dollar and other valuable considerations," assigned the leasehold interest, with the hangar situate thereon, to V. R. Freer and Ethel L. Freer. Without going into detail, we can say that the evidence justified the conclusion that V. R. Freer, the assignor in these two transfers, had no other property out of which satisfaction of plaintiff's judgment could be obtained; and it is these transfers which the creditor Cooper contended, and the court found, were fraudulent and void.

 Every conveyance or assignment made or contrived with intent to hinder, delay, or defraud creditors is void as to such creditors (§ 428.020 V.A.M.S.), and a voluntary assignment from husband to wife to the prejudice of the husband's creditors is presumptively fraudulent and void as to such creditors. Such transfers are looked upon with suspicion, and their good faith must be so clearly shown that there is no reasonable doubt as to the honesty of the transaction.[1]

Appellants Freer, in their briefs, recognize the above rule and frankly state that plaintiff Cooper made a prima facie case of fraud; but they contend that defendants have clearly shown by "overwhelming evidence" that the two properties were origi-

nally purchased (and built) from the joint funds of Ethel and V. R. Freer, husband and wife; that there was a resulting trust in the properties in favor of the wife, and the (later) transfers to husband and wife were only in rectification of the error in taking title in the name of the husband in the original transfers. The airplane was paid for by one check on the account of "V. R. Freer Construction Company" which was signed *"V. R. Freer Construction Co.* by E. L. Freer" (italics are printed). The rent for the sublease was paid by check in similar fashion. Subsequently a hangar was constructed upon the sublease, and various checks for labor and material extending over several months were issued on the same account and in the same manner. "E. L. Freer" is Ethel Freer.

In order to sustain their burden, defendants-appellants relied upon the testimony of Ethel Freer. She stated that she kept the office of V. R. Freer Construction Company (it was in the home), looked after the payroll and the records, attended to the telephone, wrote and signed most of the checks, and paid the bills. In fact, she had been "bookkeeper for Vic ever since he started in business." She said that the business of V. R. Freer Construction Company was a partnership, but we must remark that the testimony was an assent which followed a leading question from counsel. She stated, again in assent to a leading question concerning the bank account, "Q. Joint account as partners and husband and wife, is that right? A. Yes, sir." On another occasion she testified that the partnership account was "just like it has always been." Her testimony concerning her knowledge (or lack of knowledge) of the fact that title to the airplane and the hangar lease had been taken in her husband's name, and the fact of the transfer (some five years later) to husband and wife, leaves us much in doubt. We are unable to find that she

1. Harrison v. Harrison, Mo.App., 339 S.W. 2d 509; Bank of New Cambria v. Briggs, 361 Mo. 723, 236 S.W.2d 289; Oetting v. Green, 350 Mo. 457, 166 S.W.2d 548;
Conrad v. Diehl, 344 Mo. 811, 129 S.W. 2d 870; and West's Mo. Digest, Fraudulent Conveyances, 

·ever said specifically that she did not know ·or learn that her husband took sole title to the airplane and the hangar lease. As to the hangar lease she said "Yes, we have a copy of it. I don't know that I have completely read it." She said she had never read the bill of sale for the airplane. "Vic usually takes care of these things. I didn't read it." Asked if the plane was purchased in her name or V. R. Freer alone, she remarked "Well, that I don't know, Mr. Foulke." She took an acknowledgment on the bill of sale from V. R. Freer to V. R. Freer and Ethel (herself), as husband and wife.[2] "I acknowledged his signature. Vic takes care of those things." She said, "I won't say that I did" examine it before taking the acknowledgment. "If Vic comes in and asks me to notarize something for him, why I notarize his signature. I don't read it, no." It appeared from the cross-examination that V. R. Freer Construction Company had been incorporated (apparently in 1958). Asked if she was a stockholder in it, she said, "Yes, sir, I expect I am"; but that the corporation had never been "activated" and that V. R. Freer Construction Company had never done business as a corporation; that it had continued to do business from 1950 on the same bank account, and it was still a partnership at the bank. Defendants then introduced a certified copy showing that on September 12, 1950 (after the parent suit was filed), there was filed with the Secretary of State a registration of fictitious name for V. R. Freer Construction Company, which listed both Freer and his wife Ethel as owners and tenants by the entirety. Both signed the registration. The testimony of Ethel, with the cancelled checks of V. R. Freer Construction Company, and the fictitious name registration, is substantially appellants' case. From this evidence, their reasoning makes one mighty bound from the level of sole ownership to the pinnacle of tenancy by entirety where

the debtor and the property can stand untouched by creditors. We find that we must plod more slowly.

■ Does the evidence clearly show that the bank account was a tenancy by the entirety? If so, when did it become so? Neither the bank record, the pass book, nor the depositors' agreement was offered to substantiate the claim. In Harrellson v. Barks, Mo.App., 326 S.W.2d 351, 360, we said:

"In regard to this purchase the defendant relies upon the testimony of the plaintiff that 'we both had a bank account together.' The words 'joint account' are the words of the cross-examining lawyer, not the witness. The *form* of the account is not shown, nor was any effort made to show it. The expression 'joint account' is, by long continued common usage, a rather general and often erroneous term. It is often and indiscriminately applied to accounts which are held as tenants in common, as tenants by entirety, as joint tenants with right of survivorship, and to accounts which simply carry authority to check. We think this evidence, standing alone, is insufficient to overcome the strong evidence of ownership standing in and by the certificate of title. * * *"

In absence of proof of the *form of deposit*, the appellants had the burden of proving the interest of the wife therein.[3] The actual record could have been easily produced. In its absence, the trier of the fact is, at best, faced with a choice as to credibility and accuracy. And, if so, going back to the original proceeding (instituted in 1949), we find that plaintiff charged that V. R. Freer (not V. R. and Ethel Freer) was engaged in business as a general contractor under the name of Freer Construction

2. See Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975(11), State ex rel. Nelson v. Hammett, Mo.App., 203 S.W.2d 115(2).

3. Murphy v. Wolfe, 329 Mo. 545, 45 S.W. 2d 1079; see In re Baker's Estate, Mo. App., 359 S.W.2d 238, 244.

Company. The defendant in his answer admitted such. One of the issues before the referee was whether or not defendant Freer should be entitled to deduct from the profits a monthly charge of one hundred dollars, which had not been paid, for services of Ethel Freer in keeping the records, answering the telephone, and taking care of the office. The referee found that the service of Ethel Freer was a gratuitous service to her husband and disallowed the deduction. The defendant excepted to such finding, and the exception was denied in the final judgment. In the written suggestions and memorandum brief of Freer's (then) attorneys which were filed with the referee, we note this statement: "The defendant (V. R. Freer) was the sole owner of all of his capital assets, including machinery and equipment * * *." We must conclude that during the period Cooper and Freer had their profit-sharing arrangement and at the time the original indebtedness was incurred Ethel Freer had no interest in the business or assets of V. R. Freer Construction Company. The establishment of a partnership in this case must be proved by clear and convincing evidence that the terms and conditions were unequivocally and unconditionally agreed to by the parties. Prasse v. Prasse, Mo., 77 S.W.2d 1001, 1005; Bussinger v. Ginnever, Mo. App., 213 S.W.2d 230, and cases cited at loc. cit. 237; Johnson v. Johnson, Mo.App., 270 S.W.2d 65. Registration under fictitious name (in 1950) would indicate some intention of the parties to establish a partnership and tenancy by entirety. But there is *no* evidence of any transfer, any act, any contract, any assignment, or any agreement, written or verbal, by which the intention was (to use Mrs. Freer's word) ever "activated."

 There is yet another ledge along which we must plod: Assuming that the account *was* in 1950 or at some later time

placed in the name of husband and wife as tenants by the entirety, was not *that* transfer in fraud of the then existing creditor Cooper who had a suit pending? If there was no consideration for the transfer of an interest to his wife, under these circumstances, the appellants have the burden of showing that the donor had adequate means and property to satisfy his creditors.[4] There is no dispute that respondent was a creditor and his suit was pending. The only consideration indicated or argued is the fact that Mrs. Freer worked in the office, kept the books, et cetera, (as she had done theretofore). In Pelsue v. Pelsue, Mo., 367 S.W.2d 487 (one of the two cases upon which appellants rely), the wife had transferred her stock of goods to join with that of her husband's. Shortly before he died the husband signed a credit statement which indicated the business was a partnership; but it was held this was not sufficient to establish a "survivorship estate"; and also, that the fact the wife worked regularly in the operation of the business was not convincing proof of an agreement to make it an entirety, because that fact *"may just as reasonably be attributed to the marriage relationship."* Ray v. Ray, Mo.App., 336 S.W.2d 731, the only other case cited by appellants, was a contest between husband and wife. No creditors were involved and there was a joint account accumulated from deposits by both parties of their separate earnings. We believe that if there *was* at some time a transfer of the account of V. R. Freer doing business as Freer Construction Company to V. R. Freer and Ethel Freer, it would still have to be presumed fraudulent as to existing creditors because there is not shown to be any consideration therefor; and the subsequent reappropriation of a portion of the assets by the debtor would not destroy the fraudulent character.

 There is yet another facet of the case to be considered. *Assuming* that in

---

4. 37 C.J.S. Fraudulent Conveyances § 387, p. 1223; Lynes v. Holt, Mo., 1 S.W.2d 121; Minium v. Slavin, 338 Mo. 1014, 93 S.W.2d 869; Godchaux Sugars v. Quinn, Mo., 95 S.W.2d 82; see Bostian v. Bono, Mo., 322 S.W.2d 813.

1950, or at some time prior to the purchase of the airplane and the acquiring of the hangar lease, Freer transferred an interest in his business and its assets to his wife, and assuming that the transfer was not at that time in fraud of plaintiff, who was then a creditor with a suit pending, and assuming that the bank account of V. R. Freer Construction Company belonged to both parties as tenants by the entirety and co-partners, there is still the question of whether or not the acquisition of the plane and the lease and hangar, all in the name of the husband, was with the assent or acquiescence of the wife. The courts have had some difficulty with withdrawals from entirety accounts. It is said there is a "weak" presumption that property purchased with entirety funds takes on the character of entirety property.[5] But the use of entirety funds by one of the owners becomes a matter of intention, and this intention must often be determined from the facts and circumstances which imply that intention. The husband and wife can by consent, agreement, or acquiescence change the character of entirety property.[6] Where there is a "manifestation of intention" that the person acquiring the property is to have the beneficial interest, the entirety dies and the resulting trust does not follow. Restatement, Trusts 2d, § 441. Certainly the acquiescence of one tenant by the entirety to the purchase (from the joint funds) of property taken in the name of the other would destroy the entirety interest (and the resulting trust) from following the proceeds. Otherwise the character of entirety interest would extend on ad infinitum.

The airplane was bought in 1954, the hangar lease was taken in early 1955, and for several months thereafter there was considerable activity (and writing of checks) in the construction of the hangar. It was over five years later that the disputed transfers were made to husband and wife. We find testimony that Freer was flying the plane during this period, but we find no evidence that it was ever used in the construction company business, or that either the plane or hangar were treated and regarded as business assets until after the final judgment in the parent case. We have read and reread the testimony of Ethel Freer. Nowhere do we find a definite statement that she did not know or learn that her husband had acquired the properties in his own name. Five years is a long time for one who kept the office, including the books and records of the business and who had kept them "for Vic ever since he started in business," and who wrote and signed the checks for these particular withdrawals. Certainly there is no evidence that she ever objected or protested against it. Her testimony is in some respects "naively unrealistic." Kinsella v. Gibson, Mo., 307 S.W.2d 491. The implication, whether designed or unintentional, is that she has been a dutiful wife helping her husband in his affairs, doing his bidding, without question, and without understanding or comprehension. Her testimony would lead one to believe that whatever her husband did or bought was with her consent and approval; it suited her. And she does not *now* claim that her husband defrauded or misled her in regard to taking title to the property or in concealing such fact. If there are withdrawals from an entirety account for purposes which could reasonably suit the wishes, purposes, and intention of the parties, and there is no apparent objection after the withdrawals are known, the presumption should be that the withdrawals were by consent and acquiescence. This is stated in the Pelsue and Harrellson cases, supra.

5. There can often be some distinction in whether the withdrawal substantially destroys the fund, or whether the withdrawal is only of a portion or moiety. See 77 A.L.R. Anno. 79, and Feltz v. Pavlik, Mo.App., 257 S.W.2d 214, 218.

6. Ambruster v. Ambruster, 326 Mo. 51, 31 S.W.2d 28, 77 A.L.R. 782; Ray v. Ray, Mo.App., 336 S.W.2d 731, and cases at loc. cit. 734; Zahner v. Voelker, Mo.App., 11 S.W.2d 63; Pelsue v. Pelsue, Mo., 367 S.W.2d 487; Harrellson v. Barks, Mo.App., 326 S.W.2d 351.

346

In cases of this character, we must defer to the trial court in his judgment of the credibility of spoken evidence, and we should not reverse unless we find the judgment to be clearly erroneous. Harrison v. Harrison, Mo.App., 339 S.W.2d 509, and authorities at loc. cit. 514. We cannot say in this case that defendants' evidence was such as to "clearly show" that Mrs. Freer had ever had any interest in the properties involved; or, if she ever did have such an interest, that she did not acquiesce in the taking of title thereto by the husband. There are too many "unexplained factors and the absence of certain available evidence." Kinsella v. Gibson, supra; see also Brown v. Oehler, Mo. App., 192 S.W.2d 515, 517, and Russell v. Franks, 343 Mo. 159, 120 S.W.2d 37, 41. The trial court was justified in finding that the purported transfers to the name of husband and wife were fraudulent and void as an attempt to hinder and delay the creditor whom the husband has battled over the years. It is now time that the litigation should end.

The judgments are affirmed.

STONE and HOGAN, JJ., concur.