Marion Fogel BARNARD,
Plaintiff-Appellant,

v.

Lonnie L. BARNARD and Julia M.
Barnard, Defendants-Respondents.

Marion Fogel BARNARD,
Plaintiff-Respondent,

v.

Lonnie L. BARNARD and Julia M.
Barnard, Defendants-Appellants.

Nos. 10318, 10319.

Missouri Court of Appeals,
Springfield District.

June 30, 1978.

Eugene J. Feldhausen, Kansas City, Mo., Harold H. Fisher, Newark, N. J., for plaintiff-appellant-respondent.

Theodore L. Johnson, III, C. Ronald Baird, Lowther, Johnson, Franks & Baird, Springfield, Mo., for defendants-appellants-respondents.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

BILLINGS, Chief Judge.

Suit to set aside alleged fraudulent conveyances. Defendants counterclaimed for abuse of process and slander of title. Trial court granted defendants' oral motion for directed verdict at the close of plaintiff's evidence and also dismissed defendants' counterclaims. Both parties appealed. We reverse and remand.

Plaintiff Marion Fogel Barnard and defendant Lonnie Barnard were formerly husband and wife and prior to his obtaining a Nevada divorce in 1969 they lived in New Jersey with their three children. The Nevada decree was entered April 14, 1969, and Lonnie was ordered to pay $250 monthly as support for the children. He returned to New Jersey and voluntarily entered into a property settlement with Marion on May 15, 1969, which, inter alia, provided $300

weekly support for her and $60 a week for each of their three children.

On May 26, 1969, Lonnie and defendant Julia were married. They resided in New Jersey until August, 1973, at which time they moved to Lebanon, Missouri.

Child support payments ceased for Lonnie's oldest son before that boy was 21 and for his 16-year-old daughter in January of 1972, when Lonnie decided these two children were "emancipated." In 1973 Lonnie instituted a suit in New Jersey against his former wife seeking to reduce payments under the agreement. Marion sought an increase in the amount of payments. The court denied modification of, but granted Marion specific performance of the agreement. This judgment became final January 2, 1974, shortly after Lonnie had ceased making any payments under the agreement.

Marion registered the New Jersey judgment in Laclede County on May 8, 1974, and alleged Lonnie was in arrears. Execution was returned *nulla bona*. Marion then brought this suit, claiming Lonnie had voluntarily transferred his property to his present wife, Julia, that he alone had provided the purchase money for certain properties, and he had caused the title thereto be held in tenancy by the entirety. Marion sought a decree that Lonnie be declared the sole owner of defendants' properties and subject to the payment of his indebtedness to her. Defendants counterclaimed, contending plaintiff's suit constituted an abuse of process and the filing of a *lis pendens* amounted to slander of their title.

At the time of the Nevada divorce and prior to his moving to Missouri, Lonnie had substantial holdings of money, stocks and other property in his name. His after income tax income for 1969 was more than $525,000, which resulted from selling stock in his own company held in his name. In 1971 he earned $78,000 as a consultant and received $50,000 from the liquidation of his Florida corporation. He valued his assets in 1972 at $308,000 which included bank deposits, an airplane, two cars, two motorcycles, corporate stock and a house. In 1973 his assets were valued at $281,950 and were comprised basically of the same assets he had in 1972 except he sold his house for $168,000. He purchased another house for $92,000, spent some money improving this house, and deposited the remaining moneys.

In Missouri, all property was held jointly by defendants.[1] This included an 820 acre ranch, cattle, farming equipment, the two cars and two motorcycles, a residence in Lebanon, bank deposits, and the corporate stocks. Prior to trial, in sworn testimony, Lonnie acknowledged he was the source of moneys held on deposit in his and Julia's names and that proceeds from the sale of his airplane went to defendants jointly.

■ A suit to set aside conveyances in fraud of creditors is an equitable action [*Castorina v. Herrmann*, 340 Mo. 1026, 104 S.W.2d 297 (1937)] and a motion for directed verdict has no place in an equity case. *Madget v. Jenkins*, 461 S.W.2d 768 (Mo. 1970); *Moser v. Williams*, 443 S.W.2d 212 (Mo.App.1969). Such a motion is in the nature of a motion to dismiss at the close of plaintiff's evidence, authorized by Rule 67.-02, V.A.M.R., *Moser v. Williams*, supra.

■ Since the court dismissed plaintiff's cause of action at the close of her evidence, the question is whether her evidence made a prima facie case of fraudulent conveyances intended to hinder, delay or defraud creditors. *Kinsella v. Gibson*, 307 S.W.2d 491 (Mo.1957).

■ Every conveyance made with the intent to hinder, delay or defraud creditors is void as to those creditors. § 428.020 RSMo 1969. To establish a cause of action, the creditor must show a conveyance by defendant debtor made for the purpose of putting his assets beyond the reach of the creditor. Voluntary assignments from hus-

---

1. Plaintiff testified that defendant Lonnie told her in November, 1973, his move to Missouri should prove to her that this was his way of getting her off his back and "you come and get me, big girl, come all the way to Missouri." She also related that Lonnie had advised her that under Missouri law property held as tenancy by the entirety could not be levied upon.

band to wife which are prejudicial to his creditors, are presumptively fraudulent and void and viewed with suspicion. *Bank of New Cambria v. Briggs,* 361 Mo. 723, 236 S.W.2d 289 (1951); *Cooper v. Freer,* 385 S.W.2d 340 (Mo.App.1964). "[W]hen a creditor presents evidence of such a [voluntary] conveyance by a debtor, accompanied by other badges of fraud, the burden of producing evidence to establish the good faith of the transaction shifts to the grantee or donee." *Harrison v. Harrison,* 339 S.W.2d 509, 516 (Mo.App.1960).

This appeal concerns not only plaintiff's status as a judgment creditor under the New Jersey judgment but also deals with her rights under the property-support agreement and the Nevada decree. "Creditor" commonly signifies one who holds some contractual obligation against another; one who has a " . . . right to require the fulfillment of an obligation or contract . . . ." *Commerce Trust Co. v. Farmers' Exchange Bank,* 332 Mo. 979, 61 S.W.2d 928, 931 (Mo. banc 1933); Black's Law Dictionary 441 (4th ed. 1968). A judgment awarding child support payments gives a wife rights as a creditor. *Biondo v. Biondo,* 179 S.W.2d 734 (Mo.1944). Plaintiff's rights as a creditor of her former husband stem from the settlement agreement which obligated him to make weekly support payments and the Nevada divorce decree.

In her petition plaintiff alleged that subsequent to entering into the settlement and support agreement, her husband began transferring all of his New Jersey property to his present wife and upon their move to Missouri titled all the property in their joint names. Rather than a single conveyance, a series of transfers is presented which culminated in the purchase of the Missouri property. This is a situation in which a divorced man, with numerous assets, creates a tenancy by the entirety in favor of himself and his second wife. The result is the insolvency of the husband, delaying and hindering his creditor, ex-wife. See, *Pauling v. Pauling,* 159 F.2d 531 (8th Cir. 1947) cert. denied, 331 U.S. 808, 67 S.Ct. 1192, 91 L.Ed. 1829 (1947).

Plaintiff had the burden of proof as to the fraudulent nature of the conveyances. *Bank of New Cambria v. Briggs, supra; Chesley v. Krotchen,* 437 S.W.2d 680 (Mo.App.1969). A voluntary conveyance, one lacking valuable consideration, raises a presumption of fraud as to existing creditors. *Vaughn v. Christian,* 472 S.W.2d 337 (Mo.1971). Such transfers between husband and wife are particularly suspicious, and "their good faith must be so clearly shown that there is no reasonable doubt as to the honesty of the transaction." *Cooper v. Freer, supra; Harrison v. Harrison,* 339 S.W.2d 509 (Mo.App.1960). A debtor's examination received without objection shows defendant Lonnie Barnard was the source of funds deposited in the joint checking account of defendants and that the proceeds from the sale of his airplane went to defendants jointly. From the evidence, Julia Barnard made no contribution to these assets.

Fraud, being difficult to establish by direct proof, may also be shown by circumstantial evidence. There are a number of indicia of fraud which together create an inference of improper motive. These include a conveyance to a spouse or near relative; a conveyance in anticipation of a suit; inadequacy of consideration; transfer of all or nearly all of the debtor's property; insolvency; retention of possession by the debtor. *Allison v. Mildred,* 307 S.W.2d 447 (Mo.1957); *Morris v. Holland,* 529 S.W.2d 948 (Mo.App.1975). Several of these indicia are apparent in this case. The creation of the tenancy by the entirety in favor of Lonnie and his present wife resulted in a transfer of all of his property. This rendered him insolvent, while leaving him in possession of the property. While standing alone none of these indicia of fraud is sufficient, together they give rise to a strong inference of fraud. *Morris v. Holland, supra.* As Lamm, J., had occasion to say in *Cole v. Cole,* 231 Mo. 236, 132 S.W. 734 (1910):

> "Fraud is easy to accomplish and hard to prove. It is a sound proposition that, as the marital relation affords a convenient cover for fraudulent property trans-

actions between husband and wife, courts, where fraud is charged as the *gist* of the action, will closely eye such transactions (when in conflict with the claims of creditors) to see they do not hide and consummate fraud . . . ." 132 S.W. at 740.

▮ We entertain no doubt from the record in this case that plaintiff's evidence established a cause of action for fraudulent conveyance and the trial court fell into error in granting defendants' motion at the close of plaintiff's case. On retrial, plaintiff will have the opportunity to more fully develop and definitively trace the assets Lonnie formerly held in his own name.

We turn now to defendants' appeal that the court erred in dismissing their counterclaims for failing to state a cause of action.

▮ Shorn of conclusions, defendants' counterclaims allege plaintiff was guilty of abuse of process and slander of title by filing her suit. In order to maintain a cause of action for abuse of process facts demonstrating (1) an illegal, improper use of the process that is not warranted or authorized (2) an ulterior motive in exercising such process and (3) damage, must be pleaded and proved. *National Motor Club of Missouri, Inc. v. Noe,* 475 S.W.2d 16 (Mo.1972); *Moffett v. Commerce Trust Co.,* 283 S.W.2d 591 (Mo.1955); *Jenkins v. Andrews,* 526 S.W.2d 369 (Mo.App.1975). The test is whether the process has been used to accomplish some unlawful end, or to compel defendant to do some collateral thing which he could not be compelled to do legally. *Moffett v. Commerce Trust Co.,* supra; *Jenkins v. Andrews,* supra. No cause of action arises where the process is employed to perform a function intended by law. There must be a use which is beyond the scope of the process and therefore improper.

▮ Here, plaintiff sought to establish that conveyances between defendants were fraudulent as to her, that the property involved should be declared to belong solely to her former husband and therefore subject to the payment of his indebtedness to her. This was neither unlawful nor beyond the scope of the process employed. Equally without merit is defendants' count for alleged slander of title. In filing her suit for fraudulent conveyances, plaintiff was authorized and mandated under § 527.260, RSMo 1969, to file a *lis pendens* against real estate which was liable to be affected by her equitable suit.

We agree with the trial court that defendants' counterclaims failed to state causes of action against plaintiff and should be dismissed.

The judgment of the trial court is reversed and the cause remanded for trial on plaintiff's petition. Upon the court's determination of the issues therein,[2] the judgment entered thereon should include the dismissal of defendants' counterclaims.

All concur.

---

2. Prior to the presentment of evidence the plaintiff requested the trial court to make and enter findings of fact and conclusion of law. Rule 73.01(1)(b), V.A.M.R., provides: "If any party so requests before final submission of the case, the court *shall* dictate to the court reporter, or prepare and file, a brief opinion containing a statement of the grounds for its decision . . . .; and may, or if requested by counsel, *shall,* include its findings on such controverted fact issues as have been specified by counsel." (Our emphasis)